**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| EDWINA BURTON, <br><br> Plaintiff, <br><br> vs. <br><br> N.E.S. SOLUTIONS, LLC, <br><br> Defendant. | C.A. No. 1:25–cv–00295–MSM–PAS |

## N.E.S. SOLUTIONS, LLC'S MOTION TO DISMISS COMPLAINT

Defendant N.E.S. Solutions, LLC ("NES") moves to dismiss Counts I, II, and III of Plaintiff Edwina Burton's ("Plaintiff") Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted.

**I.  INTRODUCTION**

Count I and Count III of Plaintiff's Complaint—which allege failure to pay minimum wages under federal and state law, respectively—are based on a spurious theory that Plaintiff's effective hourly wage should be reduced by transportation expenses she incurred during her normal commute to and from home and work.  As discussed below, this "theory" finds no support in the Fair Labor Standards Act ("FLSA") or the Rhode Island Minimum Wage Act ("RIMWA"); it is contrary to the fundamental principle embodied by the Portal-to-Portal Act—i.e., that normal home-to-work commuting time is not compensable as a matter of law; and, it would produce an absurd result that defies common sense.  Thus, because Plaintiff alleged that, at all times, NES paid her $16.50 per hour—well-above the applicable state and federal minimum wage—Plaintiff has not alleged a plausible claim for relief under the FLSA or the RIMWA, and this Court should dismiss Counts I and III *with prejudice*.

Alternatively, the Court should dismiss Counts I and III because—even assuming *arguendo* that Plaintiff's "effective reduction" theory held water in this case (and it does not)—Plaintiff has not alleged sufficient facts to support a plausible claim that the commuting expenses she incurred ***actually reduced*** her effective wage below the federal or state minimum wage.

Finally, Count II—which alleges the nonpayment of final wages under the Rhode Island Payment of Wages Act ("RIPWA")—suffers the same fate because Plaintiff alleged that she received her "last paycheck" for "work performed through June 22, 2024," but Plaintiff did not allege that she performed ***any*** work for NES after June 22, 2024, that would necessitate the payment of wages for the week of June 23, 2024.  The Complaint is also devoid of any well-pleaded allegation that NES failed to pay—or that Plaintiff did not receive—compensation equal to at least the state and federal minimum wage for any hours of work she may have performed after June 22, 2024.  Therefore, this Court should dismiss Count III *with prejudice* as there is no set of facts that can support a plausible claim for relief under the RIPWA.

## II.  RELEVANT FACTS AS ALLEGED IN THE COMPLAINT

NES employed Plaintiff as a "patrol officer" beginning in December 2023.[1]  NES "initially compensated" Plaintiff "at a rate of $16.50 per hour," and "Plaintiff continued to be compensated" at a rate of "$16.50 for her hours worked, with payment typically made on a weekly basis."[2]  Plaintiff worked for NES "up to"—i.e., no more than— "32 hours per week."[3]

Plaintiff "was initially hired to work locally[.]"[4]  Although Plaintiff did not specifically describe the precise location of her initial "local" assignment, it is reasonable to presume it was

---

[1] *See* ECF No. 1, Complaint, ¶ 12.

[2] *Id.*, ¶¶ 16, 22.

[3] *Id.*, ¶ 15.

[4] *Id.*, ¶ 18; *see also id.*, ¶ 14 (Plaintiff worked "local assignments").

in or around her place of residence—i.e., Pawtucket, RI.[5]  "[I]n April 2024, the Defendant transferred her to the Central Falls location," which Plaintiff described as "a farther assignment than her original assignment[.]"[6]  "Defendant changed Plaintiff's work location again," but "Plaintiff declined this assignment[.]"[7]  Thus, pursuant to the Complaint, Plaintiff's self-described *farthest* work assignment while employed by NES was Central Falls, which is a municipality that geographically borders her city of residence (Pawtucket) and which, according to the United States Census Bureau, has a land area of just 1.2 square miles.[8]

Despite its geographic proximity to her residence, Plaintiff allegedly rented a U-Haul vehicle "for transportation" when NES transferred her from her original "local" assignment to the Central Falls assignment.[9]  Plaintiff alleged that the cost of her U-Haul rental ranged from "$150-$170 per week," but she clarified that this rental ended up "averaging an additional $20 per day, plus mileage and fuel, due to the increased distance" she commuted to Central Falls.[10]

Plaintiff then alleged, in conclusory fashion, that this vehicle expense was "work-related," presumably because it related to her commute to and from work.[11]  Indeed, Plaintiff did not allege that NES required her to rent this vehicle, or that this expense related to any work-related task or the completion of her principal job responsibilities as a "patrol officer"—e.g., she

---

[5] *Id.*, ¶ 2.

[6] *Id.*, ¶ 18.  Because Plaintiff alleged that her Central Falls assignment was "farther" than her original "local" assignment, this confirms that her original assignment must have been closer to her residence than Central Falls.

[7] *Id.*, ¶¶ 23, 24.

[8] *See* https://data.census.gov/profile/Central_Falls_city,_Rhode_Island?g=160XX00US4414140 (last visited Aug. 1, 2025).  It is appropriate for the Court to take judicial notice of these indisputable geographic facts concerning the size of Central Falls and its geographic proximity to Pawtucket.  *See* Fed. R. Ev. 201; *Giragosian v. Ryan*, 547 F.3d 59, 65 (1st Cir. 2008) (in deciding a motion to dismiss under Rule 12(b)(6), the "court may also consider . . . matters susceptible to judicial notice.") (internal quotations and citation omitted).

[9] ECF No. 1, Complaint, ¶¶ 18, 19.

[10] *Id.*, ¶ 19.

[11] *Id.*, ¶ 20.

did not allege that a U-Haul vehicle was necessary to transport required tools, equipment, or personnel to or from NES worksites. Rather, Plaintiff simply alleged that she rented the U-Haul vehicle "for transportation" of herself to Central Falls "due to the increased distance" resulting from her commute to the Central Falls assignment.[12]

Plaintiff alleged, also in conclusory fashion, that this vehicle expense "caus[ed] her pay to fall below the minimum wage and the appropriate overtime premium,"[13] but she did not allege any specific facts to support this legal conclusion. Namely, Plaintiff failed to allege: the number of hours she actually worked in any given day or week; the wages she actually earned in any given week; the pay she actually received in any given week; or the amount of alleged business expenses she incurred for each corresponding week—each of which would be necessary to compute her effective wage to show whether it dropped below than the statutory minimum.

Finally, Plaintiff alleged that her "last paycheck . . . only covered work performed through June 22, 2024";[14] however, the Complaint does not include any factual allegation that Plaintiff performed *any* work for NES after June 22, 2024. Rather, the Complaint simply contains conclusory legal allegations that Plaintiff "is still owed compensation for her final week of work with the Defendant," that she "was entitled to receive a final paycheck for the period covering June 23 through June 26, 2024," and that "Defendant failed to pay Plaintiff for her last week of work."[15] Nowhere in the Complaint did Plaintiff allege that she performed even a minute of work for NES during the week of June 23-29, 2024, or at any point thereafter.

---

[12] *Id.*, ¶¶ 18, 19.

[13] *Id.*, ¶ 20.

[14] *Id.*, ¶ 29.

[15] *Id.*, ¶¶ 27, 28, 31.

### III.     LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must present "factual allegations that 'raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true . . . .'" *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 29 (1st Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted). That standard also applies to state law claims that are before the District Court pursuant to its exercise of supplemental jurisdiction. *See Clark v. Mortgage Electronic Registration Systems, Inc.*, 7 F.Supp.3d 169, 174 (D.R.I. 2014).

The District Court's inquiry is a two-step process. *See Doe v. Brown University*, 166 F.Supp.3d 177, 184 (D.R.I. 2016) (citations omitted). First, the Court must separate the complaint's factual allegations (which are accepted as true) from its conclusory legal allegations (which need not be credited). *See id.* Second, "the court must determine whether the factual allegations are sufficient to support the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal quotations and citation omitted); *see also Laccinole v. Navient Solutions, LLC*, 589 F.Supp.3d 261, 267 (D.R.I. 2022) (citing *Schatz v. Republican State Leadership Committee*, 669 F.3d 50, 55 (1st Cir. 2012)).

Although the Court should accept as true "all well-pleaded factual averments," and indulge "all reasonable inferences in the plaintiff's favor," the standard "does not force [a court] to swallow the plaintiff's invective hook, line, and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996) (citations omitted); *see also Rose v. Davis*, No. 23-13 WES, 2023 U.S. Dist. LEXIS 146073, at *3 (D.R.I. Aug. 21, 2023) ("Claims comprised of

'meager, vague, or conclusory' statements are insufficient and should be dismissed.") (citing *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021)).

In sum, "[i]f the factual allegations in a complaint, stripped of conclusory legal allegations, raise no 'more than a sheer possibility that a defendant has acted unlawfully,' the complaint should be dismissed." *Crawford v. Salve Regina University*, Case No. 1:23-CV-00380-MSM-PAS, 2024 U.S. Dist. LEXIS 107842, at *13 (D.R.I. Jun. 18, 2024) (quoting *Frith v. Whole Foods Market, Inc.*, 38 F.4th 263, 270 (1st Cir. 2022)).

## IV.   ARGUMENT

### A. The Court Should Dismiss Count I Because Plaintiff Alleged that NES Paid Her an Hourly Rate Exceeding the Federal Minimum Wage, and Plaintiff's Normal Commute To and From Home and Work (and Any Expenses Incurred During Such Commute) Are Not Compensable or Reimbursable as a Matter of Law.

"To state a valid FLSA claim, plaintiff[ ] had to allege (1) that [she] [was] employed by [NES]; (2) that [her] work involved interstate activity; and (3) that [she] performed work for which [she was] under-compensated." *Pruell v. Caritas Christi*, 678 F.3d 10, 12 (1st Cir. 2012) (citing 29 U.S.C. §§ 206(a), 207(a)(1)). Plaintiff's Count I failed to plead sufficient facts to support a plausible claim for relief as to the third prong of this test for at least two reasons: (1) Plaintiff alleged that, at all times, NES paid her an hourly rate well-above the federal minimum wage, and (2) Plaintiff's normal commute to and from home and work, and the expenses incurred during such normal commute, are not compensable or reimbursable under the FLSA.

#### i.   NES Paid Plaintiff More than the Federal Minimum Wage.

The FLSA requires that covered employers pay non-exempt employees not less than $7.25 per hour. 29 U.S.C. § 206(a)(1)(c).  Plaintiff alleged that NES, at all times, paid her $16.50

per hour.[16] Thus, Plaintiff did not allege a plausible claim for relief that NES paid her below the FLSA's minimum wage, and Count I should be dismissed accordingly.

      **ii.    Federal Law Bars Plaintiff's Effective Reduction Theory Because Normal Commuting Costs To and From Home and Work Are Not "An Incident of and Necessary to the Employment," but Rather Constitute Expenses that Are Primarily for the Benefit or Convenience of the Employee.**

Plaintiff attempted to plead around the fact that NES paid her more than the federal minimum wage by claiming her hourly rate should be effectively reduced by the expenses she incurred during her normal commute to and from home (she resides in Pawtucket) and her work assignment in Central Falls. But the FLSA and its accompanying regulations preclude such a claim as a matter of law for at least three reasons, discussed in turn below.

First, although the text of the FLSA "does not address an employer's reimbursement of expenses," *Wass v. NPC International, Inc.*, 688 F.Supp.2d 1282, 1284 (D. Kan. 2010); the issue embedded within Plaintiff's theory of relief is resolved by reference to the United States Department of Labor's ("DOL") regulations. *See* 29 C.F.R. § 531.35; *see also* 29 C.F.R. §§ 531.32(c), 531.3(d); *see*, *e.g.*, *Montoya v. CRST Expedited, Inc.*, 404 F.Supp.3d 364, 389-92 (D. Mass. 2019) (explaining the interplay between the relevant FLSA regulations in analyzing whether certain transportation costs may be deducted from drivers' pay)[17]; *Wass*, 688 F.Supp.2d at 1284-6 (same for delivery drivers' vehicle expense deductions). Specifically, 29 C.F.R. § 531.35 provides:

> Whether in cash or in facilities, "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the Act will not be

---

[16] ECF No. 1, Complaint, ¶ 16 ("Plaintiff was initially compensated at a rate of $16.50 per hour"), and ¶ 22 ("Plaintiff continued to be compensated at $16.50 for her hours worked").

[17] After the District Court decided *Montoya*, it appears that settlement negotiations "disposed of all claims" except for a one concerning the issue of whether the time a driver spends on-duty in a truck's sleeper birth is compensable under the FLSA, which was appealed to and affirmed by the First Circuit. *See Montoya v. CRST Expedited, Inc.*, 88 F.4th 309, 312, fn. 1 (1st Cir. 2023). However, that appeal did not affect the District Court's rulings cited herein.

> met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the "kick-back" is made in cash or in other than cash. For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him [or her] under the Act. See also in this connection, § 531.32(c).

Section 531.32(c)—which is referenced within § 531.35—lists several business expenses, which, according to the DOL, "are primarily for the benefit or convenience of the employer" and, thus, may not be directly or indirectly charged to employees such that it causes their wage fall below the statutory minimum, including: "transportation charges where such transportation is an incident of and necessary to the employment (as in the case of maintenance-of-way employees of a railroad)[.]" 29 C.F.R. § 531.32(c); *see also* 29 C.F.R. § 531.3(d)(2) (providing a non-exhaustive list of expenses that are "primarily for the benefit or convenience of the employer" and, thus, may not be directly or indirectly charged to employees such that it causes their wage to fall below the statutory minimum, including: "(i) Tools of the trade and other materials and services incidental to carrying on the employer's business; (ii) the cost of any construction by and for the employer; [and] (iii) the cost of uniforms and of their laundering, where the nature of the business requires the employee to wear a uniform.").

In *Montoya*, U.S. District Judge Saris summarized the above-referenced DOL regulations by explaining:

> Certain costs categorically are either for the benefit of the employee or the employer, while others are more nuanced and fact specific. The dividing line is whether the employment-related cost is a personal expense that would arise as a normal living expense. If a normal expense, then it may qualify as "other facilities" [under 29 U.S.C. § 203(m)] and the cost may be deducted from employee wages, even if it drives pay below the minimum wage.

8

404 F.Supp.3d at 390 (citation and internal quotations omitted). Applying these regulations to the facts in *Montoya*, the District Court then found that "[t]ransportation to centralized locations to begin [the employer's] onboarding process" was "an incident of and necessary to the employment" and, therefore, could not be deducted from employees' wages to the extent it lowered their pay below minimum wage. *Id.* at 392. In doing so, however, the District Court clearly distinguished such non-deductible employer expenses, on the one hand, from employees' "regular commuting costs," on the other—the latter of which may lawfully have the effect of reducing employees' pay below minimum wage. *See id.* ("This is not an ordinary commuting expense that a worker would incur in daily life. Therefore, transportation costs to the Phase 2 orientation . . . cannot be deducted to the extent they lower drivers' pay below minimum wage."). Conversely, then, "regular commuting costs" and "ordinary commuting expenses" are deemed to be primarily for the benefit or convenience of the employee, which, in turn, means they can lawfully have the effect of reducing an employee's pay below minimum wage.

Similarly, interpreting 29 C.F.R. § 531.35 and considering whether certain training expenses incurred by an employee effectively reduced their wage below the statutory minimum, the District Court for the Northern District of California summarized this governing principle as follows:

> It is true that by accepting employment with the [employer], [plaintiff] took on an extra cost that she normally would not have. Most jobs, however, come with some costs. Some workers must purchase business-casual clothing for work. **Even more workers pay to commute to work, either by car or by transit. Such expenses reduce an employee's wages, but are not considered unlawful deductions and need not be reimbursed by employers**.

*Gordon v. City of Oakland*, Case No. C 08-01543 WHA, 2008 U.S. Dist. LEXIS 60524, at *9 (N.D. Cal. Jul. 24, 2008) (emphasis added) (denying motion for leave to amend complaint as to FLSA minimum wage claim premised on a similar "reduction" theory advanced here).

9

In the present case, Plaintiff has not pleaded sufficient facts to state a plausible claim that she incurred the type of business expenses referenced within or contemplated by 29 C.F.R. §§ 531.35, 531.3(d), and 531.32(c). To the contrary, Plaintiff alleged that she rented "a vehicle from U-Haul" specifically "for transportation" of herself to her Central Falls assignment, and she further alleged that she rented the vehicle "due to the increased distance" in her commute to the Central Falls assignment (yet she resides in the neighboring community of Pawtucket). Plaintiff did not allege that NES required her to rent a vehicle as a "tool of the trade"[18] or for the purpose of transporting "tools of the trade," nor did she allege that NES required her to report to a central office location for mandatory job onboarding, as was the case in *Montoya*, 404 F.Supp.3d at 392. Moreover, Plaintiff did not allege why she chose to rent a "U-Haul" vehicle to commute to and from her residence and Central Falls, rather than taking any other, presumably less costly, mode of transportation—e.g., car, bicycle, bus, taxi, etc. As a result, Plaintiff failed to plead a plausible claim that she incurred any business expenses primarily for the benefit or convenience of NES that had the effect of reducing her $16.50 hourly wage below the federal minimum wage in any workweek under applicable FLSA regulations. Count I should be dismissed accordingly.

Second, Plaintiff's Count I is contrary to the Portal-to-Portal Act of 1974, 29 U.S.C. §§ 251–262, which amended the FLSA and codified the principle that when an employee commutes to and from home and work, she is not engaging in compensable work under the FLSA. *See* 29 U.S.C. § 254(a) ("no employer shall be subject to any liability or punishment under the [FLSA] . . . on account of the failure of such employer to pay an employee minimum wages, or to pay an

---

[18] Indeed, it is an implausible stretch of the imagination to infer that a "U-Haul" vehicle is a mandatory "tool of the trade" for a self-described "patrol officer" of a private security company. ECF No. 1, Complaint, ¶ 12; *compare Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 257-58 (S.D.N.Y. 2008) (finding that delivery employees' bicycles were tools of the trade because the employer required all delivery employees to own and maintain "vehicular transportation" as condition of their employment).

employee overtime compensation, for or on account of . . . walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform."). Thus, because Plaintiff's normal commute time was not compensable work time as a matter of law, then it logically follows that Plaintiff's wages cannot be "effectively reduced" by any expenses she may have incurred during such normal commute to and from work and home. *See id*.

Courts in the First Circuit have unequivocally stated that the Portal-to-Portal Act established that normal commuting activities are not compensable. *See e.g.*, *Local 589, Amalgamated Transit Union v. Massachusetts Bay Transportation Authority*, 94 F.Supp.3d 47, 50 (D. Mass. 2015) ("Traditional commuting time is plainly excluded from the FLSA by the Portal-to-Portal Act."). The DOL's regulations similarly state: "Normal travel from home to work is not worktime." 29 C.F.R. § 785.35. That rule holds true whether the employee "works at a fixed location or at different job sites." *Id*. Therefore, if Plaintiff was not working while commuting—and there is no allegation in the Complaint to that effect—then NES cannot be on the hook for any expenses incurred by Plaintiff during such commute time, regardless of its effect on her hourly rate of pay.

Third, Plaintiff's theory of relief defies common sense and, if accepted, would produce an absurd result of precluding covered employers from paying any employee precisely at minimum wage if the employee works outside of their home and commutes to work through any means but walking.  Indeed, any such employee would naturally incur expenses related to that commute, whether they used their own vehicle, or rode public transportation, or even rode a bicycle.  This, in turn, would require all employers subject to the FLSA to pay *more* than minimum wage to account for the effective deduction of normal commuting expenses.  The FLSA could not yield

11

such an absurd result without express statutory command, and none currently exists. *See Wass*, 688 F.Supp.2d at 1284 (the FLSA "does not address an employer's reimbursement of expenses.").

As a result of the foregoing, Plaintiff has not alleged a plausible claim for relief in Count I because her transportation expenses incurred during her normal commute to and from work and home are not compensable as a matter of law under the FLSA and its accompanying regulations.

**B. The Court Should Dismiss Count III Because Plaintiff Alleged that NES Paid Her an Hourly Rate Exceeding the State Minimum Wage, and Plaintiff's Normal Commute To and From Home and Work (and Any Expenses Incurred During Such Commute) Are Not Compensable or Reimbursable as a Matter of Law.**

Count III of the Complaint, alleging a failure to pay minimum wages under the RIMWA, suffers the same fate as Count I. Plaintiff alleged that NES hired her in 2023 and that her employment with NES terminated in 2024.[19] The RIMWA provides that, effective January 1, 2023, the minimum wage was $13.00 per hour, and the minimum wage increased to $14.00 effective January 1, 2024. *See* R.I. Gen. Laws § 28-12-3(m), (n). Thus, because Plaintiff alleged that, at all times, NES paid her at an hourly rate of $16.50 per hour[20] —a rate that exceeded the state minimum wage in both 2023 and 2024—Plaintiff has not alleged a plausible claim for relief that NES paid her below the applicable minimum wage established by the RIMWA.

Moreover, while the Rhode Island Supreme Court has not had the occasion to interpret the RIMWA in the manner presented by Plaintiff in this case, Rhode Island Courts often look to federal law for guidance when interpreting analogous state laws. *See Frito-Lay, Inc. v. R.I. Department of Labor & Training*, C.A. No. PC-2012-1488, 2013 R.I. Super. LEXIS 71, at *39 (R.I. Super. Ct. Apr. 12, 2013) (citing FLSA for guidance when interpreting Rhode Island's

---

[19] ECF No. 1, Complaint, ¶¶ 12, 25.

[20] ECF No. 1, Complaint, ¶¶ 16, 22.

12

overtime law and explaining: "Where Rhode Island's statutes are substantially similar to federal statutes, this Court may look to interpretation of federal law for guidance.") (citing cases). This Court should, therefore, rely on the FLSA and its regulations for guidance in determining whether Plaintiff alleged a plausible claim for relief under the RIMWA. For the reasons identified, *supra* at 6–12, the Court should find that Plaintiff's transportation expenses, as alleged in the Complaint, related to her normal commute to and from home and work and that such expenses were, therefore, not compensable or subject to mandatory reimbursement by NES as a matter of law.  As a result, Plaintiff has alleged insufficient facts to support a plausible claim for relief under the RIMWA, and this Court should dismiss Count III accordingly.

### C. Alternatively, the Court Should Dismiss Counts I and III Because Plaintiff Has Not Alleged Sufficient Facts to Support a Plausible Claim that the Expenses She Incurred Commuting to and from Home and Work *Actually* Reduced Her Effective Wage Below The Applicable Federal or State Minimum Wage.

Even assuming *arguendo* that Plaintiff's theory of relief in Counts I and III found support in the FLSA and the RIMWA, respectively, (and it does not), Plaintiff has not alleged sufficient facts in the Complaint to plausibly show, for any given week: (1) how much work she actually performed, (2) how much she actually earned and/or received in wages, and (3) how much she actually incurred in allegedly reimbursable expenses.  In the absence of such allegations, broken down by week, it is impossible to claim from the face of the Complaint that the expenses Plaintiff allegedly incurred in any given week effectively reduced the wages she earned and received in that corresponding week below the applicable minimum wage. *See*, *e.g.*, *Wass*, 688 F.Supp.2d at 1288-89 (dismissing state and federal minimum wage claims because plaintiffs did not plead sufficient facts under *Twombly* to show the precise wages they earned as compared to the alleged reimbursable business expenses they incurred in any given week).

As an example, Plaintiff alleged that she worked between 20-32 hours per week,[21] but she did not allege how many hours she worked in any particular week, nor did she allege how many days it took her to log such hours in any particular week. Thus, at an alleged payrate of $16.50 per hour, Plaintiff could have earned anywhere between $0 per day and $396 per day (i.e., $16.50 x 24). Moreover, Plaintiff alleged that her vehicle rental ended up "averaging an additional $20 per day, plus mileage and fuel."[22] As a result, if Plaintiff worked 16 hours per day for 2 days in a particular week, she would have earned $528 for that week (i.e., 16 x 2 x $16.50), and if you subtract 2 days' worth of alleged vehicle expenses (i.e., $40) from that amount, Plaintiff would have effectively earned $15.25 per hour that week (i.e., ($528 - $40) / 32). This clearly exceeds both state and federal minimum wage, and countless other examples would as well. Thus, due to the absence of such factual allegations that are necessary to compute Plaintiff's "effective wage," the Court is left to broadly speculate as to whether Plaintiff's wage was effectively reduced below the applicable minimum wage in any given week. As such, Plaintiff has not stated a plausible claim for relief under either the FLSA or the RIMWA, and the Court should dismiss Counts I and III.[23]

### D. The Court Should Dismiss Count II, which Alleged that NES Failed to Pay Her Final Wages, Because Plaintiff Did Not Allege that She Performed *Any* Work for NES After June 22, 2024, for which She Has Not Been Paid.

In Count II, Plaintiff alleged that NES violated R.I. Gen. Laws § 28-14-4 by not paying her final wages upon separation from employment. But Plaintiff's claim must fail as a matter of

---

[21] ECF No. 1, Complaint, ¶¶ 14-15.

[22] ECF No. 1, Complaint, ¶ 19. Plaintiff did not allege any specific amount that she incurred for "mileage and fuel."

[23] We note that Plaintiff also made a passing and conclusory reference in the Complaint to her wage falling below "the appropriate overtime premium." *Id.*, ¶ 20. However, Plaintiff alleged no facts to support a plausible claim for unpaid overtime under the FLSA or applicable state law. In fact, Plaintiff alleged that, "[t]hroughout all relevant times herein, Plaintiff worked for Defendant ***up to*** 32 hours per week," *id.*, ¶ 15 (emphasis added), which directly belies any purported claim for unpaid overtime based on working in excess of forty hours per week.

law because (1) Plaintiff alleged that she received her "last paycheck" that "covered work performed through June 22, 2024,"[24] and (2) Plaintiff has not alleged sufficient facts to show that she performed any work for NES after June 22, 2024, for which she was not already paid.

R.I. Gen. Laws § 28-14-4(a) provides: "Whenever an employee separates or is separated from the payroll of an employer, the unpaid wages or compensation of the employee shall become due on the next regular payday and payable at the usual place of payment."[25]  Thus, to plead a claim under § 28-14-4(a), a plaintiff must, at a minimum, allege sufficient facts to plausibly show that they separated from their employer's payroll and that, at the time of separation, they were owed a specific amount of wages for work performed through their separation date.  *See id.*

In this case, however, Plaintiff has not alleged the minimum facts necessary to support a plausible claim for relief under § 28-14-4(a).  Because Plaintiff alleged that her "last paycheck . . . covered work performed through June 22, 2024,"[26] the Complaint must contain non-conclusory allegations that Plaintiff performed at least some specific amount of work after June 22, 2024, and that NES has not paid her, in full, for such work allegedly performed after June 22, 2024.  But the Complaint does not contain any factual allegation that Plaintiff performed work for NES after June 22, 2024.  Instead, it contains only the conclusory and legal allegations that "Plaintiff is still owed compensation for her final week of work with the Defendant," that "Plaintiff was entitled to receive a final paycheck for the period covering June 23 through June 26, 2024," and

---

[24] *Id.*, ¶ 29.

[25] Subsections (b) and (c) of this statute are inapplicable on their face because Plaintiff did not allege that she had "completed at least one year of service" for NES, *see* R.I. Gen. Laws § 28-14-4(b), or that NES liquidated, merged, or moved its business out of state.  *See id.* § 28-14-4(c).

[26] ECF No. 1, Complaint, ¶ 29.

that "Defendant failed to pay Plaintiff for her last week of work."[27]  Nowhere in the Complaint did Plaintiff allege that she performed a minute or more of compensable work for NES during the period covering June 23 through June 26, 2024 (or any period thereafter), for which she has not been paid.  Therefore, based on the absence of well-pleaded allegations in the Complaint, Plaintiff cannot state a plausible claim for relief under § 28-14-4(a), and Count II should be dismissed.[28]

## V.     CONCLUSION

Stripping the Complaint of its conclusory legal allegations, Plaintiff cannot state plausible claims for relief under Count I (FLSA), Count II (RIPWA), or Count III (RIMWA) sufficient to survive a Rule 12(b)(6) Motion. As such, the Court should dismiss the Complaint in its entirety *with prejudice*.

Respectfully submitted,

N.E.S. SOLUTIONS, LLC,

By its attorneys,

/s/ *Timothy C. Cavazza*
Timothy C. Cavazza (#8079)
Kevin W. Stone, Jr. (#10843)
WHELAN CORRENTE & FLANDERS LLP
100 Westminster Street, Suite 710
Providence, RI 02903
Tel: (401) 270-4500
Fax: (401) 270-3760
tcavazza@whelancorrente.com
kstone@whelancorrente.com

Dated: August 1, 2025

00122790.DOCX

---

[27] *Id.*, ¶¶ 27, 28, 31.

[28] In Count II, Plaintiff also made a passing reference to R.I. Gen. Laws § 28-14-2.2, which generally requires covered employers to make weekly payment of wages; however, Plaintiff alleged that she "typically" received her wages "on a weekly basis."  ECF No. 1, Complaint, ¶ 16.  Therefore, Plaintiff has not alleged a plausible claim for relief under § 28-14-2.2.